**Francis BOVE, Plaintiff,**

v.

**Trooper Brian M. KENNEDY, as an individual and in his official capacity, and John and/or Jane Doe(s), being and intending to be police officer(s), public servant(s), and/or employee(s) of the State of New York, Defendants.**

No. 93–CV–1113 (JG).

United States District Court, E.D. New York.

Sept. 18, 1995.

**115**

Patrick Kevin Brosnahan, Jr., Babylon, New York, for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York by Robert K. Drinan, Assistant Attorney General, Mineola, NY, for defendants.

## AMENDED MEMORANDUM AND ORDER

GLEESON, District Judge.

Plaintiff Francis Bove brought this action under 42 U.S.C. § 1983 against the defendant New York State Trooper Brian M. Kennedy, alleging false arrest, malicious prosecution, and conspiracy to violate his constitutional rights, and seeking damages of several million dollars.[1] Kennedy had arrested Bove at approximately 4:45 p.m. on March 13, 1992 and charged him with driving while intoxicated ("DWI"). Bove was acquitted of the charge after a non-jury trial in the Suffolk County Supreme Court.

Kennedy now moves for summary judgment dismissing the complaint on the ground of qualified immunity. In the alternative, he contends that to the extent he has been sued in his official capacity, the claim against him is barred by the Eleventh Amendment. Finally, he argues that because plaintiff has not stated any grounds to support the conspiracy claim, it too should be dismissed.

For the reasons stated herein, the motion for summary judgment is granted with respect to the claims raised against defendant Kennedy in his official capacity, and with respect to the claim of conspiracy. In all other respects, the motion is denied.

---

1. Several John Doe defendants were named, but none have since been identified. Discovery was

*FACTS*

The undisputed facts are as follows. On March 13, 1992, Trooper Kennedy's unmarked patrol car came to a stop on the southbound shoulder of Mount Avenue in West Babylon, New York. A tan Cadillac rested on the shoulder behind the patrol car. Plaintiff Bove was seated alone in the Cadillac. In front of Kennedy's car, also on the shoulder, was a red Ford Bronco in which sat Bove's son, Richard Bove. Kennedy got out of his car and approached the Bronco, and Bove got out of the Cadillac and approached Kennedy. Bove demanded to know what was going on and Kennedy turned and asked who he was. Bove then saw Kennedy's badge and realized he was a police officer. Bove answered, "I'm his father." Kennedy then told Bove to return to his car, which Bove refused to do. The two argued a little more, as they approached the Bronco. When Bove was between Kennedy and the patrol car, Kennedy suddenly ducked past Bove and entered his car to call for back-up. He stayed there until other police officers arrived. Bove was then asked whether he had been drinking and he replied that he had had one beer. At that point the officers placed him under arrest for DWI. He was taken into police headquarters where he refused to take a Breathalyzer test.

At the subsequent trial, Trooper Kennedy testified that at approximately 4:45 p.m. on March 13, 1992, he observed a red Ford Bronco travelling south on Mount Avenue, noticed that it had no front plate or registration sticker, and decided to pull it over. Just before he did so, he observed a tan Cadillac pull onto the right shoulder in front of a residence. After he pulled over the Bronco some distance in front of the Cadillac, he noticed that the Cadillac moved closer to the two cars. As he attempted to obtain documentation from the driver of the Bronco, he saw plaintiff Bove get out of the driver's seat of the Cadillac and walk toward him. The confrontation described above ensued, in the course of which Kennedy smelled alcohol on Bove's breath, noticed that he had bloodshot

completed in July 1994.

eyes, and concluded that he had been drinking to excess. Finally, Kennedy testified that after arresting Bove he turned off the motor in the Cadillac, took the keys, and handed them to Bove's son, the driver of the Bronco. Significantly, this last allegation conflicts directly with Kennedy's position upon this motion, which is that he "did not observe Bove operate the Cadillac and the keys to the Cadillac were not recovered." (Def.'s R. 3(g) Stmt. ¶ 6 n. 1, Def.'s Ex. F.)[2] A further assertion in Kennedy's motion papers also appears to be in conflict with the trial testimony:

> "While proceeding south on Mount Avenue in West Babylon, Kennedy activated his emergency lights in order to effectuate the stop of a red Bronco. The driver of the Bronco, later identified as plaintiff's son, Richard Bove, stopped his vehicle on the shoulder of the road and Kennedy stopped his vehicle behind the Bronco. *A beige Cadillac was on the shoulder of the road directly behind the police car.*"

(Def.'s R. 3(g) Stmt. ¶ 6) (emphasis added). These two inconsistencies, both of which appear in Kennedy's Rule 3(g) statement, strongly suggest that he intends to abandon the claim that the Cadillac approached the patrol car after it had pulled over the Bronco.

At the trial on the criminal charges, Bove did not testify about how the three cars came to be parked along the Mount Avenue shoulder. His lawyer appeared to avoid questioning him about it, and successfully objected to the prosecutor's questions about it on cross-examination. The trial transcript is consequently devoid of any explanation. At his deposition in this case, however, Bove stated that the patrol car was at an angle to the side of the road and that its rear was sticking out into traffic. (Bove Dep. at 61, Pl.'s Ex. F.) This description would suggest that the Bronco and the Cadillac were already parked alongside the road when the patrol car arrived, and that it attempted to fit into the

space between them. Later in the deposition Bove made the following statement which could support either the above scenario or the one put forth by Kennedy: "You had to be there to see this car pull up behind." (*Id.* at 63.)

On the other hand, Bove testified extensively at the criminal trial about events earlier in the day on March 13, 1992. The essence of his defense at the trial was that the car had been inoperable at the time of the arrest and that he could not have been driving it. Bove testified that the Cadillac, which belonged to his wife, Florence Bove, had broken down earlier in the day while she was driving it. The motor failure had allegedly occurred while the car was in precisely the position it occupied at the time of the arrest. Mrs. Bove had locked the disabled car, walked the short distance to Bove's place of business,[3] and borrowed Bove's car for the day. She took the keys to the Cadillac with her, but allegedly did not tell Bove she had done so. The trial transcript does not indicate how Bove became aware that he did not have these keys.

Bove testified further at the trial that he sought the assistance of a gas station mechanic by the name of Jimmy Lee, who accompanied him to the Cadillac and pried open the lock. When the door was opened, Bove searched the interior of the car for the keys. Finding none, he left the car unlocked and followed Lee back to the filling station, where Lee called for a tow truck. He then returned to his office and called his son, who had an extra set of keys to the Cadillac, and asked him to bring them over. Then, after consuming pizza and a beer, he returned at about 4:15 p.m. to the car and again searched its interior for the keys. He then waited for the tow truck to arrive. While he was waiting the incident with Trooper Kennedy took place.

---

**2.** This allegation is especially significant in light of Kennedy's argument on this motion that he could justifiably have believed that Bove had the keys but had merely hid them under the seat or elsewhere in the Cadillac. Kennedy is clearly aware, for reasons that will become evident, that the question whether he knew the whereabouts of the keys is material to resolution of this motion.

**3.** The car was close enough to Bove's place of work that it was visible from the front entrance.

Several witnesses who testified at the trial corroborated Bove's account. Robert Ruggiero, the driver of the tow truck that eventually arrived on the scene, stated that he had seen the Cadillac parked on the shoulder of Mount Avenue between 3:00 and 3:30 p.m. on March 13, 1992 (more than an hour before Bove's confrontation with Kennedy), and had marked the tire so that he would know if someone later tried to move the car. He testified that when he returned at 5:15 p.m. to tow the car, it was in precisely the same position, which he knew because the mark on the tire was right where he had left it. Steven Martin, a passerby, also testified that he had seen the Cadillac in the same position at 2:30 p.m. Finally, the gas station mechanic, Jimmy Lee, testified that he had opened the door of the Cadillac at Bove's request, and had later repaired the car after it was towed to his shop. He stated that the condition of the car before he fixed it would have rendered it entirely inoperable. Finally, Mrs. Bove and Richard Bove both gave testimony corroborating Bove's account.

The judge ruled that the prosecution had not proved beyond a reasonable doubt that Bove had driven the Cadillac at all on March 13, 1992. The charges against him were consequently dismissed. Prior to this disposition, the charges against Bove of failure to submit to a chemical test for alcohol, and against Richard Bove of driving without license plates or a registration sticker, had been dismissed by an Administrative Law Judge.

## DISCUSSION

The law governing the application of qualified immunity to claims of false arrest was clearly set forth by the Second Circuit in *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992):

> The qualified or "good faith" immunity enjoyed by police officers shields them from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Hurlman v. Rice,* 927 F.2d 74, 78 (2d Cir.1991); *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987), or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights, *see Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *Hurlman v. Rice,* 927 F.2d at 78 (2d Cir.1991); *Calamia v. City of New York,* 879 F.2d 1025, 1035 (2d Cir.1989). The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right. Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. *Dunaway v. New York,* 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979). An arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed; or (b) officers of reasonable competence could disagree on whether the probable cause test was met. *See Malley v. Briggs,* 475 U.S. at 341, 106 S.Ct. at 1096; *Robison v. Via,* 821 F.2d at 921. In order to be entitled to summary judgment on such a defense, the officer must adduce sufficient facts that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff, could conclude that it was objectively unreasonable for the officer to believe that probable cause did not [sic] exist.[4]

Accordingly, the question presented here is whether it would be possible to conclude, after viewing the evidence in the light most

---

**4.** I include the "[sic]" because the word "not" appears to insert one too many negatives in the sentence.

favorable to Bove, that Kennedy's belief in the existence of probable cause to arrest Bove for DWI was objectively unreasonable.

Bove's submissions opposing the motion do not present this precise issue. Instead he contends that Trooper Kennedy deliberately perjured himself at Bove's criminal trial in order to make out a material element of the crime of DWI—operating a motor vehicle. According to Bove, this misdeed requires a finding that Kennedy is not entitled to invoke the defense of qualified immunity, as no officer who would perjure himself to obtain a conviction should be protected by the defense.

■ This representation of the rule is not entirely correct. Rather, when on a motion for summary judgment a false arrest claimant asserts that misrepresentations made by the defendant officer create an issue of fact, the court must determine whether the issue is material. *Cartier v. Lussier*, 955 F.2d at 845. It does so by setting aside the allegedly false material and examining the remaining undisputed facts to determine whether they contain sufficient indicia of probable cause. *Id.*

■ Here, Bove asserts that Kennedy perjured himself when he stated at trial that the Cadillac moved along the shoulder toward the patrol car after the latter had pulled over the Bronco.[5] Therefore, for purposes of the instant motion, this testimony must be set aside and the remaining facts examined for their impact on the question whether Kennedy was protected by qualified immunity. However, few other facts are available to explain precisely what Kennedy saw before and after he pulled to the shoulder, and why he might have believed that Bove had been driving the Cadillac. Resolution of these factual questions is of course, necessary for a proper consideration of whether Kennedy reasonably believed he had probable cause to arrest Bove for DWI. Bove, who bears the

burden of setting forth pertinent facts, has simply failed to do so, aside from pointing the Court's attention to a few vague assertions he made at deposition, *see supra* at 116.

Nevertheless, when all the evidence is viewed and all inferences are drawn in favor of the non-movant, as required on a motion for summary judgment, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990), the following picture presents itself. On March 13, 1992 at approximately 4:45 p.m., Kennedy's car came to a stop on the southbound shoulder of Mount Avenue between Richard Bove's red Bronco, and the tan Cadillac belonging to Francis Bove. Francis Bove was seated inside the Cadillac, which had been at rest for several hours in the precise position it occupied when Kennedy's patrol car pulled over. The events that followed are undisputed and are described *supra* at 115.

Even accepting this scenario, there is no dispute that Kennedy spotted Bove alone on the road either behind the wheel of or next to the Cadillac, and that a confrontation ensued.[6] These circumstances alone would make it extremely difficult for a jury to conclude that Kennedy's belief that Bove had been operating the car was unreasonable. As defendant points out, a police officer need not actually view a person operating a vehicle before arresting him or her for DWI.[7] Therefore, a conclusion that Kennedy is protected by qualified immunity from further litigation of Bove's claims would appear to be warranted.

However, the basis for reaching such a conclusion is severely weakened by the inconsistent statements Kennedy made at trial and on this motion, concerning the keys to the Cadillac. A demonstration at trial that Kennedy knew Bove did *not* have the keys to

---

5. Bove's argument receives added force from Kennedy's apparent abandonment of the very allegations Bove contends are false.

6. According to this scenario, Kennedy would have become aware of Bove's presence in the Cadillac either at the moment Kennedy pulled to the side of the road, or seconds later when Bove

emerged from the car and asked Kennedy what was going on.

7. The best illustration of this principle is when an intoxicated driver is involved in an accident, and police do not arrive at the scene until after the car has come to a stop.

the Cadillac would establish the unreasonableness of Kennedy's claimed belief that Bove had been driving the car. Therefore, Kennedy's apparent equivocation on this obviously material issue is an important reason not to grant summary judgment in his favor. Once again, Bove has not raised this specific issue in his opposition to the motion. Indeed, he has not stated, in the motion papers or elsewhere, that he specifically informed Kennedy that he was not in possession of the keys. Nevertheless, he has argued strenuously that Kennedy fabricated his testimony at the criminal trial. Accordingly, construing all inferences in his favor requires at the very least that this Court be suspicious of Kennedy's allegations and analyze their effect when they are internally inconsistent. Stated differently, Bove has raised an issue of fact concerning Kennedy's truthfulness at the criminal trial, and this issue is material to a determination of what it was that Kennedy observed on the afternoon of March 13, 1992, that informed his decision to arrest Bove. Specifically, there is a genuine issue of fact with respect to the basis for Kennedy's asserted belief that Bove had been driving the car. The argument that there are no outstanding factual issues that are pertinent to the qualified immunity defense is thus without merit.[8]

■ There remains an issue of whether Kennedy may be sued in his official capacity. A suit against a state official in his or her official capacity is treated as a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 24, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Accordingly, the rule that a state is not a "person" who may be held liable for damages under § 1983, applies as well to officials of that state acting in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Damages may be obtained against such an official under § 1983 only when he is sued in his personal capacity. *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir.1989). Therefore, the parts of Bove's claims that have been raised against Kennedy in his official capacity are dismissed.

■ Finally, plaintiff's claim of conspiracy to violate his civil rights is without merit. Section 1985(3) of Title 42, United States Code, provides a cause of action for damages to a person who has suffered injuries as a result of a conspiracy between at least two others to deprive him of his civil rights.[9] Although discovery is complete in this case, plaintiff has offered no information concerning the identities of defendant Bove's alleged co-conspirators. Indeed, he has not even attempted to amend the complaint or modify the caption of the case to name the individuals he claims took part in the alleged conspiracy. Consequently, plaintiff has failed to raise an issue of fact with respect to an essential element of the conspiracy claim, and it is accordingly dismissed.

### ORDER

Defendant Kennedy's motion for summary judgment on the ground of qualified immunity is hereby denied. Plaintiff Bove's conspiracy claim is dismissed, however, as are the rest of his claims to the extent that they are asserted against Kennedy in his official capacity.

So Ordered.

---

8. Bove's undisputed display of belligerence toward Kennedy in the course of their confrontation was sufficient to cause reasonable officers to disagree about whether Bove was intoxicated at the time.

9. The section reads in pertinent part:
   "If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."