HAFER *v.* MELO ET AL.

No. 90–681.   Argued October 15, 1991—Decided November 5, 1991

O'CONNOR, J., delivered the opinion of the Court, in which all other Members joined, except THOMAS, J., who took no part in the consideration or decision of the case.

*Jerome R. Richter* argued the cause for petitioner. With him on the briefs was *Goncer M. Krestal.*

*William Goldstein* argued the cause for respondents. With him on the brief was *Edward H. Rubenstone.**

JUSTICE O'CONNOR delivered the opinion of the Court.

In *Will* v. *Michigan Dept. of State Police,* 491 U. S. 58 (1989), we held that state officials "acting in their official capacities" are outside the class of "persons" subject to liability

---

*Richard Ruda* filed a brief for the National Association of Counties et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Civil Liberties Union et al. by *Andrew J. Pincus, John A. Powell,* and *Steven R. Shapiro;* for the American Federation of Labor and Congress of Industrial Organizations by *Robert M. Weinberg, Walter Kamiat,* and *Laurence Gold;* for Kenneth W. Fultz by *Cletus P. Lyman;* and for Nancy Haberstroh by *Stephen R. Kaplan.*

under Rev. Stat. § 1979, 42 U. S. C. § 1983. 491 U. S., at 71. Petitioner takes this language to mean that § 1983 does not authorize suits against state officers for damages arising from official acts. We reject this reading of *Will* and hold that state officials sued in their individual capacities are "persons" for purposes of § 1983.

## I

In 1988, petitioner Barbara Hafer sought election to the post of auditor general of Pennsylvania. Respondents allege that during the campaign United States Attorney James West gave Hafer a list of 21 employees in the auditor general's office who secured their jobs through payments to a former employee of the office. App. 10. They further allege that Hafer publicly promised to fire all employees on the list if elected. *Ibid.*

Hafer won the election. Shortly after becoming auditor general, she dismissed 18 employees, including named respondent James Melo, Jr., on the basis that they "bought" their jobs. Melo and seven other terminated employees sued Hafer and West in Federal District Court. They asserted state and federal claims, including a claim under § 1983, and sought monetary damages. Carl Gurley and the remaining respondents in this case also lost their jobs with the auditor general soon after Hafer took office. These respondents allege that Hafer discharged them because of their Democratic political affiliation and support for her opponent in the 1988 election. *Id.*, at 28, 35, 40. They too filed suit against Hafer, seeking monetary damages and reinstatement under § 1983.

After consolidating the Melo and Gurley actions, the District Court dismissed all claims. In relevant part, the court held that the § 1983 claims against Hafer were barred because, under *Will*, she could not be held liable for employment decisions made in her official capacity as auditor general.

24

The Court of Appeals for the Third Circuit reversed this portion of the District Court's decision. 912 F. 2d 628 (1990). As to claims for reinstatement brought against Hafer in her official capacity, the court rested on our statement in *Will* that state officials sued for injunctive relief in their official capacities are "persons" subject to liability under § 1983. See *Will, supra,* at 71, n. 10. Turning to respondents' monetary claims, the court found that six members of the Gurley group had expressly sought damages from Hafer in her personal capacity. The remaining plaintiffs "although not as explicit, signified a similar intent." 912 F. 2d, at 636.* The court found this critical. While Hafer's power to hire and fire derived from her position as auditor general, it said, a suit for damages based on the exercise of this authority could be brought against Hafer in her personal capacity. Because Hafer acted under color of state law, respondents could maintain a § 1983 individual-capacity suit against her.

We granted certiorari, 498 U. S. 1118 (1991), to address the question whether state officers may be held personally liable for damages under § 1983 based upon actions taken in their official capacities.

---

*The Third Circuit looked to the proceedings below to determine whether certain respondents brought their claims for damages against Hafer in her official capacity or her personal capacity. 912 F. 2d, at 635–636. Several other Courts of Appeals adhere to this practice. See *Conner* v. *Reinhard,* 847 F. 2d 384, 394, n. 8 (CA7), cert. denied, 488 U. S. 856 (1988); *Houston* v. *Reich,* 932 F. 2d 883, 885 (CA10 1991); *Lundgren* v. *McDaniel,* 814 F. 2d 600, 603–604 (CA11 1987). Still others impose a more rigid pleading requirement. See *Wells* v. *Brown,* 891 F. 2d 591, 592 (CA6 1989) (§ 1983 plaintiff must specifically plead that suit for damages is brought against state official in individual capacity); *Nix* v. *Norman,* 879 F. 2d 429, 431 (CA8 1989) (same). Because this issue is not properly before us, we simply reiterate the Third Circuit's view that "[i]t is obviously preferable for the plaintiff to be specific in the first instance to avoid any ambiguity." 912 F. 2d, at 636, n. 7. See this Court's Rule 14.1(a) ("Only the questions set forth in the petition, or fairly included therein, will be considered by the Court").

## II

In *Kentucky* v. *Graham,* 473 U. S. 159 (1985), the Court sought to eliminate lingering confusion about the distinction between personal- and official-capacity suits. We emphasized that official-capacity suits " 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Id.,* at 165 (quoting *Monell* v. *New York City Dept. of Social Services,* 436 U. S. 658, 690, n. 55 (1978)). Suits against state officials in their official capacity therefore should be treated as suits against the State. 473 U. S., at 166. Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation. See Fed. Rule Civ. Proc. 25(d)(1); Fed. Rule App. Proc. 43(c)(1); this Court's Rule 35.3. Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham, supra,* at 166 (quoting *Monell, supra,* at 694). For the same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses. 473 U. S., at 167.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.,* at 166. While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. *Id.,* at 166–167.

Our decision in *Will* v. *Michigan Dept. of State Police,* 491 U. S. 58 (1989), turned in part on these differences between

personal- and official-capacity actions. The principal issue in *Will* was whether States are "persons" subject to suit under § 1983. Section 1983 provides, in relevant part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

The Court held that interpreting the words "[e]very person" to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter "'the federal balance'" when it seeks to do so. *Will, supra,* at 65 (quoting *United States* v. *Bass,* 404 U. S. 336, 349 (1971)).

The Court then addressed the related question whether state officials, sued for monetary relief in their official capacities, are persons under § 1983. We held that they are not. Although "state officials literally are persons," an official-capacity suit against a state officer "is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." 491 U. S., at 71 (citation omitted).

Summarizing our holding, we said: "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Ibid.* Hafer relies on this recapitulation for the proposition that she may not be held personally liable under § 1983 for discharging respondents because she "act[ed]" in her official capacity as auditor general of Pennsylvania. Of course, the claims considered in *Will* were official-capacity claims; the phrase "acting in their official capacities" is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury. To the extent that *Will*

allows the construction Hafer suggests, however, we now eliminate that ambiguity.

## A

*Will* itself makes clear that the distinction between official-capacity suits and personal-capacity suits is more than "a mere pleading device." *Ibid.* State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. *Ibid.* By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person." Cf. *id.*, at 71, n. 10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'") (quoting *Graham*, 473 U. S., at 167, n. 14).

Hafer seeks to overcome the distinction between official- and personal-capacity suits by arguing that § 1983 liability turns not on the capacity in which state officials are sued, but on the capacity in which they acted when injuring the plaintiff. Under *Will*, she asserts, state officials may not be held liable in their personal capacity for actions they take in their official capacity. Although one Court of Appeals has endorsed this view, see *Cowan* v. *University of Louisville School of Medicine*, 900 F. 2d 936, 942–943 (CA6 1990), we find it both unpersuasive as an interpretation of § 1983 and foreclosed by our prior decisions.

Through § 1983, Congress sought "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Monroe* v. *Pape*, 365 U. S. 167, 172 (1961). Accordingly, it authorized suits to redress deprivations of civil rights by persons acting "under color of any [state] statute, ordinance, regulation, custom, or usage." 42 U. S. C. § 1983. The requirement of action under color of state law means that Hafer may be liable for

discharging respondents precisely because of her authority as auditor general. We cannot accept the novel proposition that this same official authority insulates Hafer from suit.

In an effort to limit the scope of her argument, Hafer distinguishes between two categories of acts taken under color of state law: those outside the official's authority or not essential to the operation of state government, and those both within the official's authority and necessary to the performance of governmental functions. Only the former group, she asserts, can subject state officials to personal liability under § 1983; the latter group (including the employment decisions at issue in this case) should be considered acts of the State that cannot give rise to a personal-capacity action.

The distinction Hafer urges finds no support in the broad language of § 1983. To the contrary, it ignores our holding that Congress enacted § 1983 " 'to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.' " *Scheuer* v. *Rhodes*, 416 U. S. 232, 243 (1974) (quoting *Monroe* v. *Pape, supra,* at 171–172). Because of that intent, we have held that in § 1983 actions the statutory requirement of action "under color of" state law is just as broad as the Fourteenth Amendment's "state action" requirement. *Lugar* v. *Edmondson Oil Co.,* 457 U. S. 922, 929 (1982).

Furthermore, Hafer's distinction cannot be reconciled with our decisions regarding immunity of government officers otherwise personally liable for acts done in the course of their official duties. Her theory would absolutely immunize state officials from personal liability for acts within their authority and necessary to fulfilling governmental responsibilities. Yet our cases do not extend absolute immunity to all officers who engage in necessary official acts. Rather, immunity from suit under § 1983 is "predicated upon a considered inquiry into the immunity historically accorded the relevant

official at common law and the interests behind it," *Imbler* v. *Pachtman*, 424 U. S. 409, 421 (1976), and officials seeking absolute immunity must show that such immunity is justified for the governmental function at issue, *Burns* v. *Reed*, 500 U. S. 478, 486–487 (1991).

This Court has refused to extend absolute immunity beyond a very limited class of officials, including the President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions, "whose special functions or constitutional status requires complete protection from suit." *Harlow* v. *Fitzgerald*, 457 U. S. 800, 807 (1982). State executive officials are not entitled to absolute immunity for their official actions. *Scheuer* v. *Rhodes, supra.* In several instances, moreover, we have concluded that no more than a qualified immunity attaches to administrative employment decisions, even if the same official has absolute immunity when performing other functions. See *Forrester* v. *White*, 484 U. S. 219 (1988) (dismissal of court employee by state judge); *Harlow* v. *Fitzgerald, supra* (discharge of Air Force employee, allegedly orchestrated by senior White House aides) (action under *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971)); *Davis* v. *Passman*, 442 U. S. 228 (1979) (dismissal of congressional aide) (*Bivens* action). That Hafer may assert personal immunity within the framework of these cases in no way supports her argument here.

## B

Hafer further asks us to read *Will*'s language concerning suits against state officials as establishing the limits of liability under the Eleventh Amendment. She asserts that imposing personal liability on officeholders may infringe on state sovereignty by rendering government less effective; thus, she argues, the Eleventh Amendment forbids personal-capacity suits against state officials in federal court.

Most certainly, *Will*'s holding does not rest directly on the Eleventh Amendment. Whereas the Eleventh Amendment bars suits in federal court "by private parties seeking to impose a liability which must be paid from public funds in the state treasury," *Edelman* v. *Jordan*, 415 U. S. 651, 663 (1974), *Will* arose from a suit in *state* court. We considered the Eleventh Amendment in *Will* only because the fact that Congress did not intend to override state immunity when it enacted § 1983 was relevant to statutory construction: "Given that a principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims," Congress' failure to authorize suits against States in federal courts suggested that it also did not intend to authorize such claims in state courts. 491 U. S., at 66.

To the extent that Hafer argues from the Eleventh Amendment itself, she makes a claim that failed in *Scheuer* v. *Rhodes, supra*. In *Scheuer*, personal representatives of the estates of three students who died at Kent State University in May 1970 sought damages from the Governor of Ohio and other state officials. The District Court dismissed their complaints on the theory that the suits, although brought against state officials in their personal capacities, were in substance actions against the State of Ohio and therefore barred by the Eleventh Amendment.

We rejected this view. "[S]ince *Ex parte Young*, 209 U. S. 123 (1908)," we said, "it has been settled that the Eleventh Amendment provides *no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." *Scheuer, supra*, at 237. While the doctrine of *Ex parte Young* does not apply where a plaintiff seeks damages from the public treasury, damages awards against individual defendants in federal courts "are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." 416 U. S., at 238. That is, the Eleventh Amendment does not erect a barrier

against suits to impose "individual and personal liability" on state officials under § 1983. *Ibid.*

To be sure, imposing personal liability on state officers may hamper their performance of public duties. But such concerns are properly addressed within the framework of our personal immunity jurisprudence. See *Forrester* v. *White, supra,* at 223. Insofar as respondents seek damages against Hafer personally, the Eleventh Amendment does not restrict their ability to sue in federal court.

We hold that state officials, sued in their individual capacities, are "persons" within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts.

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE THOMAS took no part in the consideration or decision of this case.