In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1663

Roger Luder, et al.,

Plaintiffs-Appellees,

v.

Jeffrey P. Endicott, et al.,

Defendants-Appellants.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 90-C-694--Barbara B. Crabb, Judge.

Argued September 22, 2000--Decided June 15, 2001

Before Posner, Manion, and Evans, Circuit
Judges.

Posner, Circuit Judge. The plaintiffs in
this suit under the Fair Labor Standards
Act, 29 U.S.C. sec.sec. 201 et seq., are
145 employees of a Wisconsin state
prison, seeking damages against the
warden, deputy warden, and personnel
officers of the prison, all in their
individual (personal) rather than
official capacities. Originally the
plaintiffs sought injunctive relief as
well, but the district court held that
only the government may seek injunctive
relief under the FLSA and the plaintiffs
wisely have not appealed that ruling.
E.g., United Food & Commercial Workers
Union, Local 1564 v. Albertson's Inc.,
207 F.3d 1193, 1197-98 (10th Cir. 2000);
Powell v. Florida, 132 F.3d 677 (11th
Cir. 1998) (per curiam); see 29 U.S.C.
sec.sec. 211, 217; Lorilland v. Pons, 434
U.S. 575, 581 (1978).

The plaintiffs claim that the defendants
force them to work before and after their
official shifts without paying them. The
work in question includes checking
equipment, reporting to shift
supervisors, and listening to roll-call
announcements before the shift, and,
after the shift, checking equipment and
briefing the employees on the next shift.
The damages sought are the federal

minimum wage (including time and a half for overtime) that the plaintiffs would be entitled to if as they contend the pre-shift and post-shift "work" counts as work under the Act. Whether it does or not has not been adjudicated and we intimate no view on the question.

The plaintiffs acknowledge that the Eleventh Amendment would bar a damages suit brought in federal court under the Fair Labor Standards Act against either the State of Wisconsin or, what in law is the same thing (subject to an exception discussed later), the defendants in their official capacities. They therefore seek damages against the defendants only in the defendants' individual capacities. The district court denied the defendants' motion to dismiss the suit as barred by the Eleventh Amendment. The defendants have taken an interlocutory appeal from that denial, as they are entitled to do.

The plaintiffs are employees of the Wisconsin Department of Corrections, which is to say of the State of Wisconsin, and not of the defendants, who are merely their supervisors. The FLSA defines "employer," however, to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. sec. 203(d); see, e.g., Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987); Herman v. RSR Security Services Ltd., 172 F.3d 132, 139-40 (2d Cir. 1999); Baystate Alternatives Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir. 1998). The cases we have just cited and others we could cite interpret this to mean that the supervisor who uses his authority over the employees whom he supervises to violate their rights under the FLSA is liable for the violation. That's precisely what the plaintiffs say the defendants did to them.

The Eleventh Circuit has held that a public officer sued in his individual capacity cannot be an employer because it is only in his official capacity that he has authority over the employees' terms of employment. Wascura v. Carver, 169 F.3d 683, 686-87 (11th Cir. 1999); Welch v. Laney, 57 F.3d 1004, 1011 (11th Cir. 1995). With respect, we think that this cannot be right, as it would imply that a police officer who used excessive force against a person he was arresting could

not be sued in his individual capacity because it was only by virtue of his office that he had the authority to make the arrest. Power and authority are not synonyms. If the allegations of the complaint are true (as we must assume they are, given the posture of the case), the defendants had and exercised the raw power to deny the plaintiffs their rights under the FLSA. In any event, the distinction on which the Eleventh Circuit relied had been swept away by the Supreme Court in Hafer v. Melo, 502 U.S. 21, 28 (1991), which neither of the Eleventh Circuit cases cited.

But our conclusion that the plaintiffs have stated a claim under the FLSA merely poses, it does not answer, the Eleventh Amendment question. It cannot be answered in the abstract. The application of the amendment to suits against state officials in their individual capacity depends on the circumstances. The general rule is that such suits are not barred by the amendment, because the plaintiff is seeking damages from individuals rather than from the state treasury. E.g., id. at 30-31; Alden v. Maine, 527 U.S. 706, 757 (1999) (an FLSA case); Papasan v. Allain, 478 U.S. 265, 278 n. 11 (1986); Kentucky v. Graham, 473 U.S. 159 (1985); Travis v. Reno, 163 F.3d 1000, 1007 (7th Cir. 1998). The fact that the state chooses to indemnify its employees who are sued in federal court is irrelevant, Benning v. Board of Regents, 928 F.2d 775, 778-79 (7th Cir. 1991); Sales v. Grant, 224 F.3d 293 (4th Cir. 2000); Jackson v. Georgia Dept. of Transportation, 16 F.3d 1573, 1577-78 (11th Cir. 1994); Griess v. Colorado, 841 F.2d 1042 (10th Cir. 1988) (per curiam); Spruytte v. Walters, 753 F.2d 498, 512 and n. 6 (6th Cir. 1985); Demery v. Kupperman, 735 F.2d 1139, 1146-49 (9th Cir. 1984), because it is the voluntary choice of the state, not a cost forced on it by the federal-court suit. Likewise irrelevant is the fact that any exposure of state employees to suit in federal court will, by increasing the expected cost of working for the state, compel the state by reason of competition in the labor market to pay its employees more than if they had a blanket immunity from such suits. Duckworth v. Franzen, 780 F.2d 645, 651 (7th Cir. 1986); Huang v. Johnson, No. 99-9226, 2001 WL 527402, at *4 (2d Cir. May 17, 2001); Carlos Manuel

Vazquez, "Eleventh Amendment Schizophrenia," 75 Notre Dame L. Rev. 859, 880 (2000). It is also irrelevant that the judgment may exceed the employee-defendant's capacity to pay unless he is indemnified, Huang v. Johnson, supra, at *4, which is merely a misfortune for the plaintiffs unless it places additional pressure on the state to cough up the money--but that, like the other labor-market ramifications of liability arising from public employment, is irrelevant too.

   These examples show that the Eleventh Amendment does not protect the states against every expense or inconvenience that the suability of their employees in federal court for violations of federal law might visit upon the states, especially but not only expenses and inconveniences that  a state could largely avoid by being hardhearted about claims against its employees (i.e., not pay them!). But even when a suit is against a public officer in his or her individual capacity, the court is obliged to consider whether it may really and substantially be against the state. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 270 (1997); Ysleta Del Sur Pueblo v. Laney, 199 F.3d 281, 286 (5th Cir. 2000). "[A] suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101 n. 11 (1984). Indirect effects are not enough; otherwise the practical necessity for a state to compensate an employee for bearing liability risks would place individual-capacity suits under the bar of the Eleventh Amendment. But a suit nominally against state employees in their individual capacities that demonstrably has the identical effect as a suit against the state is, we think, barred. Any other position would be completely unrealistic  and would make a mockery of the Supreme Court's heightened sensitivity to state prerogatives.

   By way of contrast, suppose the state had a firm policy of complying with the FLSA. Indeed, to make it an even clearer case, suppose the state required even

more generous overtime pay for its employees than the Act requires. Suppose that a state supervisory employee who had formerly worked for a Wall Street law firm misread the Act to require the payment of overtime pay only if an employee had worked more than 100 hours in the preceding week. This supervisor in thus violating the Act would be acting in the interest of his employer, not in a purely personal interest that would take him outside of the Act's definition of "employer." A suit against him would advance rather than thwart state policy and would impose a minuscule or perhaps even a negative burden on the state.

This case is the opposite and not only because the State of Wisconsin does not share the plaintiffs' interpretation of the Fair Labor Standards Act. The plaintiffs are seeking to accomplish exactly what they would accomplish were they allowed to maintain this suit against the state and did so successfully: they are seeking to force the state to accede to their view of the Act and to pay them accordingly. Nominally, it is true, they are seeking damages merely for a period beginning three years before they filed their suit and presumably ending on the day a judgment is entered in their favor. But this is just the tip of the iceberg. And not a small tip either. The amount sought is unclear (indeed cannot be determined exactly until the judgment is entered), but it obviously exceeds the ability of these four defendants to pay (remember there are 145 plaintiffs), unless persons of great family wealth are more attracted to prison employment than strikes us as likely. It will thus not be an option for the state to indemnify them. If it refuses to indemnify them, they will have only two choices. One will be to declare bankruptcy and quit; the other will be to declare bankruptcy and comply with the FLSA as interpreted by the court by directing payment of additional wages (assuming the plaintiffs' suit is found to have merit). Compliance will not involve their paying the plaintiffs for before-shift and after-shift work. These defendants are not going to pay a chunk of the prison's wages out of their own shallow pockets. The state will have to pay. If it refuses to pay, the plaintiffs will bring a fresh suit against the defendants--but before that happens, upon

the first inkling that the state will not be paying the wages to which the plaintiffs have been adjudged entitled, the defendants will quit their jobs lest they be faced with another crushing judgment. Thus, whether or not the state indemnifies these supervisory employees, these FLSA "employers," it will, if the present suit is allowed to go forward to judgment for the plaintiffs, be forced to pay the plaintiffs the additional wages they seek. The effect will be identical to a suit against the state. The money will flow from the state treasury to the plaintiffs. This is not hypothetical, but inescapable; and it is not a scenario found in any of the cases that have rejected Eleventh Amendment challenges to individual-capacity suits.

It may be objected that notwithstanding the Eleventh Amendment, states can be enjoined from violating federal law even though compliance with the injunction will cost the state. But the objection is imprecise. The Eleventh Amendment is not limited to damages judgments. It applies to injunctive suits, as well, against the states. Pennhurst State School & Hospital v. Halderman, supra, 465 U.S. at 100; MSA Realty Corp. v. Illinois, 990 F.2d 288, 291 (7th Cir. 1993); Cooper v. St. Cloud State University, 226 F.3d 964, 968 (8th Cir. 2000); O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir. 2000). There is, it is true, the exception carved out in Ex Parte Young: state officials may be sued in their official capacity for injunctive relief against violations of federal law, including of course nonconstitutional as well as constitutional. E.g., Idaho v. Coeur d'Alene Tribe of Idaho, supra, 521 U.S. at 281. Even though suits against state officials in their official capacity are deemed suits against the states themselves, and even though the Eleventh Amendment applies to equitable as well as to legal relief, the doctrine of Ex Parte Young in effect enables injunctive relief to be obtained in federal court against a state. But the plaintiffs do not invoke Ex Parte Young. They cannot, because they are not suing the defendants in their official capacities and because they cannot obtain injunctive relief under the FLSA. They do not fit within the only exception that might be applicable to a suit nominally against individuals but realistically against the state. This suit is

transparently an effort at an end run around the Eleventh Amendment.

   The judgment is reversed with instructions to dismiss the suit with prejudice.

Reversed.