**Thomas R. BORNICK, Plaintiff,**

v.

**Kenneth SONDALLE, in his individual capacity, Defendant.**

No. 01–C–0405.

United States District Court,
E.D. Wisconsin.

Nov. 20, 2001.

Jeff Scott Olson, Jeff Scott Olson Law Firm, Madison, WI, for Plaintiff.

Richard Briles Moriarty, Michael J. Losse, Wisconsin Department of Justice,

Office of the Attorney General, Madison, WI, for Defendant.

## DECISION AND ORDER

GORENCE, United States Magistrate Judge.

The plaintiff, Thomas R. Bornick, commenced this action on April 25, 2001, against defendant, Kenneth Sondalle. In his first amended complaint (complaint), the plaintiff alleges that his rights secured under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 215(a)(3) were violated when his employment was terminated by the defendant in retaliation for reporting wage violations. The plaintiff alleges that defendant Sondalle, who was at all relevant times a warden for the State of Wisconsin, is sued in his individual capacity. The plaintiff seeks compensatory damages, including damages for lost wages, out-of-pocket expenses, physical, mental and emotional distress, community humiliation and loss of reputation, and punitive damages.

The defendant filed a motion to dismiss based on lack of jurisdiction (Docket # 7) and a motion to dismiss the first amended complaint for lack of jurisdiction (Docket # 10). Both motions seek dismissal of the complaints on the ground that the action is barred by the Eleventh Amendment because the state's immunity also extends to the defendant.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D.Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

## DEFENDANT'S MOTIONS TO DISMISS

The defendant filed a motion to dismiss the complaint for lack of subject matter on June 20, 2001. Thereafter, on June 25, 2001, the plaintiff filed an amended complaint. An amended complaint supersedes the prior complaint. *See Duda v. Board of Educ. of Franklin Park Public School Dist. No. 84,* 133 F.3d 1054, 1056 (7th Cir.1998). In *Duda,* the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* (citations omitted). In light of the foregoing, the initial defendant's motion to dismiss (Docket # 7) will be denied.

The defendant also filed a motion to dismiss the amended complaint based on lack of jurisdiction on July 5, 2001, citing Rules 12(b)(1) and (2) of the Federal Rules of Civil Procedure. He asserts that the Eleventh Amendment of the United States Constitution bars the plaintiff's claims under the FLSA, as amended, 29 U.S.C. § 201 *et seq.* The defendant notes that the plaintiff asserts that he sues the defendant only in his individual capacity and only for monetary relief under the FLSA. However, the defendant contends that under binding precedent, the claims against the defendant under the FLSA are actually claims against the state and therefore barred by the Eleventh Amendment. The defendant cites *Luder v. Endicott,* 253 F.3d 1020 (7th Cir.2001) and *Mueller v. Thompson,* 133 F.3d 1063, 1064 (7th Cir. 1998), in support of his position.

In opposing the motion, the plaintiff asserts that his claim in this case is genuinely against the defendant in his individual capacity, as the claim is based upon actions

made solely by the defendant which were not in furtherance of any state custom or policy. In so contending, the plaintiff relies on *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir.2001).[1] He also argues that the circumstances of this case are different than those presented in *Luder*.

A motion brought pursuant to Rule 12(b)(1) seeks dismissal for lack of subject matter jurisdiction. In ruling on a Rule 12(b)(1) motion, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir.1993). A court must dismiss the case without ever reaching the merits if it concludes it has no jurisdiction. *Id.* However, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether, in fact, subject matter jurisdiction exists." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979).

In a motion to dismiss for lack of subject matter jurisdiction where the relevant facts are contested, the party asserting jurisdiction bears the burden of establishing the required jurisdictional facts "by competent proof." *Id.* The plaintiff must prove by "a preponderance of the evidence or 'proof to a reasonable probability' that jurisdiction exists." *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir.1995) (quoting *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 [7th Cir.1993] ). In resolving the issue of subject matter jurisdiction, the plaintiff's complaint will be read as a whole with any relevant specific allegations found in the body of the complaint taking precedence over the formal jurisdictional allegation and with all uncontroverted factual allegations being accepted as true. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1350, at 219–20 (1990); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The defendant's motion to dismiss also cites Fed.R.Civ.P. 12(b)(2), which refers to a motion to dismiss for lack of personal jurisdiction. In ruling on a motion to dismiss for lack of personal jurisdiction, courts are not limited to the facts set forth in the complaint, but rather may receive and consider affidavits from both parties. *Nelson v. Park Industries, Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983); *see also, Met–L–Wood Corp. v. SWS Industries, Inc.*, 594 F.Supp. 706, 708 n. 5 (N.D.Ill.1984). When deciding such a motion solely on the basis of the parties' written materials, the plaintiff need only show a *prima facie* case of personal jurisdiction and is entitled to have all inferences about material jurisdictional facts resolved in his favor. *Wisconsin Elec. Mfg. Co., Inc. v. Pennant Products, Inc.*, 619 F.2d 676, 677 (7th Cir.1980).

Review of the allegations of the complaint to determine whether the plaintiff's complaint is actually a claim for damages against the state is essential to an analysis of the Eleventh Amendment issue raised by the defendant's motion.[2] The court will accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *See Capitol Leasing Co.*, 999 F.2d at 191.

At all relevant times, the plaintiff was employed by the State of Wisconsin Department of Corrections (Department of

---

**1.** *Wynn* is a § 1983 prisoner rights case. It discusses individual and official capacity § 1983 claims with respect to the Eleventh Amendment. *Wynn,* 251 F.3d at 592. It is not helpful with respect to the issue presented by the instant case.

**2.** No evidence outside the complaint has been submitted for consideration by the court.

Corrections). "At all material times" to the complaint, defendant Kenneth Sondalle was employed as a warden for the Department of Corrections. (Complaint ¶ 5). The plaintiff alleges that defendant Sondalle is sued in his individual capacity. (Complaint ¶ 5). In July 1978, the plaintiff began work as a correctional officer at Waupun Correctional Institution in Waupun Wisconsin. By 1991, the plaintiff had reached the rank of captain.

In 1991, the plaintiff initiated a grievance procedure for wage and hour violations against his employer, the Department of Corrections. He sought compensation for overtime hours worked but not paid. Thereafter, sometime in 1993, the plaintiff filed a wage and hour complaint with the Department of Employment Relations in Madison, Wisconsin. After an investigation, the Department of Employment Relations wrote a letter directing the Department of Corrections to compensate the plaintiff for 325 hours of overtime. The Department of Corrections did not comply with the directive. The Department of Corrections settled with the plaintiff fifteen months later.

The "Madison Office, as well as many managing officers," knew of the plaintiff's wage and hour complaint. (Complaint ¶ 23). · "At this time," defendant Sondalle, who later terminated the plaintiff's employment, was the Administrator of the Department of Corrections' Division of Adult Institutions. (Complaint ¶ 23). The implications of the plaintiff's complaint were "far-reaching and potentially costly" for the Department of Corrections. (Complaint ¶ 23). When the complaint was filed, it was clear that the Department of Corrections would quite possibly be responsible for compensating numerous eligible employees, like the plaintiff, who might choose to make a claim for overtime pay.

The plaintiff alleges that he was subject to seven reprisals after he made his wage and hour complaint. The first reprisal occurred one month after the plaintiff initiated his complaint in 1991, when Jeff Smith, his supervisor at that time, moved the plaintiff from first to second shift. The second reprisal, occurred when the plaintiff's supervisor, Adelaide Krahn, Chief of Training and Standards, decided that the plaintiff was no longer "allowed to teach at MPTC/FDL, despite many other correctional officers doing the same thing." (Complaint ¶ 27).

The third reprisal took place in 1996 when Ms. Krahn initiated an investigation of the plaintiff's personal use of a state computer and his placing of long distance phone calls on state phones.[3] Pre-disciplinary procedures were not followed. The plaintiff received a letter of reprimand and a five-day suspension as a result of the investigation.[4] Ms. Krahn verbally reprimanded the plaintiff in front of Tom Borgen, the "Security Chief." (Complaint ¶ 37). Ms. Krahn also "realigned" some of the plaintiff's responsibilities, "including removal of Juvenile Training responsibility." (Complaint ¶ 36). As the fourth reprisal, the plaintiff alleges that Ms. Krahn passed over the plaintiff for a vacant training officer job without explanation, although he was the most qualified applicant.

The fifth reprisal occurred when Mike Paschke, Director of Correction Officer

---

**3.** The plaintiff had informed Ms. Krahn about his wage and hour complaint with the Department of Employment Relations. The date when the plaintiff informed Ms. Krahn is not provided in the complaint.

**4.** The complaint does not identify the author of the letter of reprimand or who ordered the suspension.

Pre–Services, investigated the plaintiff for maltreatment of trainees in 1997. Ms. Krahn supervised Mr. Paschke during this investigation. Although no formal disciplinary action was taken, the plaintiff's training schedule was altered to restrict his participation in fitness days. The denial of the plaintiff's annual raise in 1997 was the sixth reprisal.[5]

The seventh reprisal occurred when the plaintiff was discharged on April 28, 1998. At that time, the plaintiff was working as a captain at the Fox Lake Correctional Institution. The plaintiff transferred to Fox Lake Correctional Center in October 1997, in part due to multiple warnings from fellow employees that "things were bad for him [Bornick] at CTC [Corrections Training Center]" and that "Madison [Central Office] had it in for him." (Complaint at ¶ 53).

Knowing that the "Madison offices" were "unhappy" with his prior wage and hour complaints, the plaintiff asked defendant Sondalle, the warden at Fox Lake Correctional Institution, if the use of a state phone line for voice mail was sanctionable. (Complaint at ¶ 54). Despite being told by the defendant not to worry about it, the plaintiff received a full investigation regarding the use of the state voice mail. (Complaint at ¶ 55–56).

On February 9, 1998, the defendant assured the plaintiff that his job was secure. (Complaint at ¶ 61). However, after "personnel manager" Kenneth Campbell received certain information from the "Madison offices," defendant Sondalle discharged the plaintiff on April 28, 1998, because of "a finding of improper use of state equipment." (Complaint ¶ 62). The final decision to discharge the plaintiff was made by the defendant "with the advisement" of Mr. Campbell. (Com-

plaint ¶ 60). Other employees, who also engaged in improper telephone use, only received verbal reprimands and orders to pay restitution. (Complaint ¶ 59). One of those employees was even told later that she would not have to pay restitution. (Complaint ¶ 59).

 Considering such relevant facts as set forth by the plaintiff, the court will address the defendant's motion. The defendant's contention is that the plaintiff's claims under the FLSA regarding his employment by the Wisconsin Department of Corrections, an agency of the State of Wisconsin, are barred by ·the Eleventh Amendment.

A brief summary of the law regarding suits against public officials in their official capacity as opposed to their individual capacity is essential to an understanding of the issue presented. This issue was discussed in *Hafer v. Melo*, 502 U.S. 21, 26–27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). In *Hafer*, a newly-elected state official fired 18 individuals. They sued her under 42 U.S.C. § 1983, which authorizes actions to redress deprivations of civil rights by persons acting under color of state law. *Id.* The plaintiffs contended that the defendant fired them based on their political affiliation. The defendant asserted that the claims against her were barred because she acted in her official capacity.

The Court stated that "the phrase [ ]acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Id.* at 27, 112 S.Ct. 358. The Court further stated that the distinction between official-capacity suits and personal-capacity suits is more than "a mere pleading device." *Id.* The Court explained that state officers sued for dam-

5. The complaint does not identify who was responsible for this action.

ages in their official capacity are not [ ]persons' for purposes of the suit "because they assume the identity of the government that employs them." *Id.* The Court further stated that, by contrast, officers sued in their personal capacity come to court as individuals and, thus, fit comfortably within the statutory term "person" which appears in § 1983. *Id.* at 27, 112 S.Ct. 358.

The Court rejected the defendant's argument that the Eleventh Amendment forbids personal-capacity claims against state officials in federal court, noting that such argument previously had failed. *Id.* The Court stated that since *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), "it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." *Hafer,* 502 U.S. at 30, 112 S.Ct. 358 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 40 L.Ed.2d 90 [1974]). The Court also recognized that "while the doctrine of *Ex parte Young* does not apply where a plaintiff seeks damages from the public treasury, damages awards against individual defendants in federal courts are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." *Id.* (quoting 416 U.S. at 238, 94 S.Ct. 1683).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State...." It is well established that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting *Employees v. Missouri Dep't of Public Health and Welfare,* 411 U.S. 279, 294, 93 S.Ct. 1614, 36 L.Ed.2d 251 [1973]).

The application of the Eleventh Amendment as a bar to an action under the FLSA by state employees against their supervisors in an individual capacity suit to recover back wages was addressed in *Luder v. Endicott,* 253 F.3d 1020 (7th Cir. 2001). In *Luder,* the court cited examples to illustrate that the Eleventh Amendment does not protect the states against every expense or inconvenience that the suability of their employees in federal court for violations of federal law might visit upon the states. 253 F.3d at 1023. Examples of situations which do not give rise to the Eleventh Amendment bar include a state's decision to indemnify its employees, or competition causing the state to pay higher wages to its employees than if they had blanket immunity from lawsuits in federal court. *Id.*

Nonetheless, the court also emphasized that "even when a suit is against a public officer in his or her individual capacity, the court is obligated to consider whether it may really and substantially be against the state." *Id.* at 1022 (citing *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 270, 117 S.Ct. 2028, 138 L.Ed.2d 438 [1997]; *Ysleta Del Sur Pueblo v. Laney,* 199 F.3d 281, 286 [5th Cir.], *cert. denied,* 529 U.S. 1131, 120 S.Ct. 2007, 146 L.Ed.2d 957 [2000]). The appellate court stated that "[A] suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Luder,* 253 F.3d at 1023 (quoting *Pennhurst State School,* 465 U.S. at 101 n. 11, 104 S.Ct. 900). The court further stated:

Indirect effects are not enough; otherwise the practical necessity for a state to compensate an employee for bearing liability risks would place individual-capacity suits under the bar of the Eleventh Amendment. But a suit nominally against state employees in their individual capacities that demonstrably has the identical effect as a suit against the state is, we think, barred.

*Luder*, 253 F.3d at 1023.

The following circumstances were presented in *Luder*. In *Luder*, 253 F.3d at 1021, the plaintiffs, employees of a state prison, brought an action under the FLSA against the warden, deputy warden and personnel officers of the prison in their individual capacities. The plaintiffs alleged that they were forced to work fifteen minutes before and after their official shifts without pay. *Id.* at 1022. The damages sought from the defendants were the federal minimum wages that the plaintiffs would have earned during their pre- and post-shift work if, as they contended, such work counted as "work" under the FLSA. *Id.*

The court noted that the plaintiffs acknowledged that the Eleventh Amendment would bar a suit for damages brought in federal court under the FLSA against the State of Wisconsin or the defendants in their official capacity.[6] *Id.* The court stated that its conclusion that the plaintiffs had stated a claim against the defendants under the FLSA merely posed, but did not answer, the Eleventh Amendment question. *Id.* The court stated that the general rule is that such suits are not barred by the Eleventh Amendment because the

plaintiff is seeking damages from the individuals rather than the state treasury. *Id.* at 1022–23.

However, the court observed that if the plaintiffs prevailed they would have forced the state to pay employees the additional wages or else discontinue the policy of making employees work before and after each shift. *Id.* The court held that the action was barred by the Eleventh Amendment because "the plaintiffs were seeking to accomplish exactly what they would accomplish were they allowed to maintain this suit against the state." *Id.*

The application of the Eleventh Amendment as a bar to an action under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq* was addressed in *Lizzi v. Alexander*, 255 F.3d 128, 130 (4th Cir.2001). The defendant cites *Lizzi*, stating that it may provide a closer factual analogy.

In *Lizzi*, the plaintiff filed an action under the FMLA against the Washington Metropolitan Area Transit Authority, which was his former employer, and seven individual supervisors. The plaintiff alleged that the termination of his employment for unexcused absences violated the FMLA. The district court granted summary judgment for the transit authority on sovereign immunity grounds, but denied the supervisors' motion for summary judgment.

On appeal, the court held that the transit authority possessed Eleventh Amendment immunity. *Id.* at 132. The court also held that the FMLA does not validly

---

**6.** The court noted that there is an exception to the Eleventh Amendment bar against official capacity claims against state officials-they may be sued in their official capacity for injunctive relief against violations of federal law, regardless of whether those violations are constitutional violations. *Luder*, 253 F.3d

at 1022, 1024–25. The court explained that such exception was not applicable in that case. *Id.* at 1024–25. It is also not applicable in the instant case which is brought only against the defendant in his individual capacity and does not seek injunctive relief. *See Id.*

abrogate a state's Eleventh Amendment immunity. *Id.* at 135–36. The court further held that the plaintiff's complaint made it clear that the state was the real party in interest. *Id.* at 136. In so holding, the court noted that although the plaintiff's complaint included seven individuals as defendants, it never stated whether the individuals were sued in their individual or official capacity. *Id.* The court also observed that the allegations of the complaint recounted how the transit authority as an agency decided to fire the plaintiff. *Id.* Finally, the court observed that any actions of the individual defendants were inextricably tied to their official duties. *Id.*

The court rejected the plaintiff's contention that *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) required that his claims against the supervisors should be treated as an individual-capacity suit. *Id.* at 137. The court held that *Hafer* was inapposite since it is based upon the "broad language of § 1983." *Id.* (citation omitted). The court held that, unlike § 1983, the FMLA is not focused on those who carry the "badge of authority of a state." *Id.* The court cited additional considerations which it determined militate against interpreting the FMLA to hold individual employees personally liable for official acts. *Id.* at 137. Thus, the court dismissed the claims against the transit authority for lack of subject matter jurisdiction and the claims against the individuals because such claims were "in reality an action against the agency itself." *Id.*

By letter filed on October 2, 2001, the defendant has submitted supplemental authority, *Montgomery v. State of Maryland,* 266 F.3d 334 (4th Cir.2001). He states *Montgomery* is supportive of his position regarding individual capacity claims on statutes which are based on the commerce clause.

In *Montgomery,* the plaintiff, who was employed at a state correctional institution, brought an action brought against two supervisors in their official and individual capacities, alleging that the defendants violated the FMLA. The court held that, with the exception of a claim for injunctive relief, the Eleventh Amendment barred the plaintiff's claims. In large part, the court relied upon its decision in *Lizzi.*

At the outset, the court notes that the defendant asserts that the plaintiff's complaint against him "devolves to a complaint that he discharged [the plaintiff] after an acknowledged use of state property for personal purposes." (Reply Brief Supporting Motion to Dismiss First Amended Complaint Based on Lack of Subject Matter Jurisdiction at 4). The defendant contends that the plaintiff's suit is barred by the Eleventh Amendment because the suit is actually against the state since the suit challenges the decisions of State officials regarding public property.

This argument is not persuasive given the standards which are applicable to the defendant's motion to dismiss. The essence of the plaintiff's complaint is that, regardless of his improper use of state equipment, his employment was terminated in retaliation for his complaint of wage and hour violations.

█ In this case, the plaintiff alleges that defendant Sondalle's discharge of him violated rights secured to the plaintiff under the FLSA which prohibits retaliation against employees who report wage and hour violations. To establish a *prima facie* case of retaliation under the FLSA, a plaintiff must show that he engaged in a protected activity, that he suffered an adverse employment action and that a causal connection existed between the protected activity and the adverse action. *Scott v.*

*Sunrise Healthcare Corp.*, 195 F.3d 938, 940 (7th Cir.1999).

In the instant case, the manner in which the plaintiff has pleaded his case makes it somewhat difficult to resolve the Eleventh Amendment issue. In bringing this action against the defendant in his individual capacity, the plaintiff seeks damages, including lost wages, based on the defendant's "unlawful actions." (Complaint ¶ 66). The plaintiff seeks compensatory and punitive damages. Punitive damages are indicative of an individual capacity claim. However, neither a claim for punitive damages nor the allegation that the defendant state official is being sued in his individual capacity is dispositive of the issue before the court. *See Lizzi*, 255 F.3d at 137 ("The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleadings." [quoting *Coeur d' Alene*, 521 U.S. at 270, 117 S.Ct. 2028] ).

Rather, the court must discern the nature and focus of the plaintiff's complaint. The complaint sets forth seven alleged reprisals resulting from the plaintiff's filing of his wage and hour complaint. These retaliatory reprisals occurred over a seven-year period. Each of these alleged reprisals relates to the plaintiff's employment. Of the seven reprisals, only the final reprisal involves the defendant. There is no apparent connection between the defendant and the first six reprisals. Notably, all seven alleged reprisals were tied to the duties of the individuals as employees of the State of Wisconsin.

The plaintiff claims that the seventh reprisal, the termination of his employment in 1998, was in retaliation for a wage and hour complaint he initiated in 1991. However, the plaintiff does not allege that the defendant knew of this complaint at any time prior to the discharge. Notably, the defendant did not become the plaintiff's supervisor until six years after the plaintiff first filed his wage and hour grievance. The defendant was the plaintiff's supervisor for only seven months. Furthermore, with respect to the final reprisal, the plaintiff states that the "Madison Office" was unhappy with him for his prior wage and hour complaint. He further states that the defendant fired him only after receiving information from the "Madison office," which was conveyed to him by Mr. Campbell, a "personnel manager."

In a seeming attempt to develop a nexus, the plaintiff also lists six other alleged reprisals by different individuals, all of whom were state employees. Each of these six reprisals was done in the individual's capacity as a state employee. The plaintiff's retaliation claim is actually predicated on all seven alleged reprisals.

The allegations of the complaint in this case are not entirely analogous to those in *Luder*. However, when the allegations of the complaint are considered as a whole, it becomes apparent that the real party in interest is the State. *Luder* sets forth a clear message that with respect to the FLSA, courts should not allow artful pleading to circumvent the Eleventh Amendment immunity afforded to the state.

Although presented as a claim against the defendant in his individual capacity, even construing the complaint in the light most favorable to the plaintiff, it is clear that the plaintiff's action is in reality an action against the state. As such, the action is barred by the Eleventh Amendment. Therefore, the defendant's motion to dismiss the plaintiff's complaint based on the Eleventh Amendment will be granted.

### *ORDER*

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion to

dismiss for lack of jurisdiction (Docket # 7) be and hereby is **denied.**

**IT IS ALSO ORDERED** that the defendant's motion to dismiss the first amended complaint based on lack of subject matter jurisdiction (Docket # 10) be and hereby is **granted.**

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.