William NATAL, on behalf of himself and all other persons similarly situated, known and unknown, Benito Ordonez, Jr., and Kishan Rampersadsingh, Plaintiffs,

v.

MEDISTAR, INC., and Kirill Smolov, individually, Defendants.

No. 14 cv 2992

United States District Court, N.D. Illinois, Eastern Division.

Signed 12/16/2016

Douglas M. Werman, Sarah Jean Arendt, Zachary Cole Flowerree, Maureen Ann Salas, Werman Salas P.C., Chicago, IL, for Plaintiffs.

## ORDER

Susan E. Cox, U.S. MAGISTRATE JUDGE

This Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/4a, comes before the Court on plaintiffs' renewed motion for summary judgment against defendant Kirill Smolov ("Smolov"). Plaintiffs originally filed their motion against Smolov on September 25, 2015, but Smolov's intervening bankruptcy stayed the action for several months. That bankruptcy was dismissed on the Trustee's motion on July 29, 2016, and plaintiffs renewed the instant motion. For the reasons stated below, plaintiffs' motion for summary judgment on liability and for liquidated damages [84] is granted.

## I. *FACTS*

The facts in this case come from Plaintiffs' Local Rule 56.1(a) Statement of Facts which, with few exceptions, is stipulated as true by Smolov. Medistar, Inc. ("Medistar") is a company that provided non-emergency medical transportation services for several years, before filing for bankruptcy on June 23, 2015. Medistar is an "enterprise" as that term is defined by the FLSA, 29 U.S.C. § 203 (r)(1), and is an enterprise engaged in commerce or in the production of goods for commerce within Section 203(s)(1)(A) of the FLSA. Medistar had only two management employees— Smolov and Mark Binder. Smolov served as the Chief Financial Officer of Medistar.

Plaintiffs in this case were drivers assigned to pick up passengers from their residences or nursing homes and drive them to and from their destinations. Defendant admits that although these drivers were, in fact, employees under the FLSA and the IMWL, Medistar misidentified them as independent contractors. All three plaintiffs worked over forty hours a week, but were not paid any overtime. Instead, they were paid their regular rate of pay for all hours worked. In addition, plaintiff Natal did not authorize in writing certain deductions from his pay: namely, $2,200 for damage to a vehicle, and an additional $100.00 for a speeding ticket that he received during his work. Finally, during the month of March 2014, Medistar failed to pay plaintiff Natal any wages for his work.

Smolov began his career in non-emergency transportation services with a company called Med Car Services. After that company ceased its operations, Medistar was formed in 2012. All of the drivers who

had worked for Med Car started working for Medistar. Medistar was financed in large part by a loan from Smolov's father, Boris Smolov, who owed fifty percent of Medistar and held the title of president. Boris, however, had no involvement in the day-to-day business operations of Medistar. Defendant offered him the title of president instead as a way of securing his father's investment in the business.

Smolov held no other employment other than his management position at Medistar. He reported to the business on a daily basis and actively solicited employees to work as drivers. Smolov interviewed and hired employees. He had the authority to issue payroll checks or to refuse to issue them. He computed all of the wages for all of the employees and signed their payroll checks. Any complaints about computation of wages were dealt with by him. He also handled accounts payable, sometimes juggling invoices which were due to be paid by delaying payroll and payroll tax payments when Medistar did not have enough money to pay all of its bills. Smolov also handled transportation billing for the company's customers and followed up with the company's vendors to ensure that these bills were paid. He handled all of the day-to-day accounting, reviewed the company's tax returns and renewed licenses for the company vehicles.

Smolov was not the only management employee at Medistar. Mark Binder was designated Vice–President of Operations and handled the dispatching and scheduling of the drivers, had some hiring and firing responsibilities and entered into contracts on behalf of Medistar. Binder described his duties as largely operational, a term he defined as making sure that the company had a schedule, dispatched employees to handle the required pick-ups and drop-offs, and similar duties. Binder could fire an employee and had input on hiring decisions and trained employees.

However, Smolov alone had responsibility over accounts payable, accounts receivables, and billing. In August 2014, Binder and Smolov had a disagreement during which Binder threatened to close the company and Smolov told him to leave. Binder did so.

Binder's departure did not change operations at Medistar. Smolov continued to operate the company—hiring and firing drivers, and determining their rates of pay and their hours. After the United States Department of Labor investigated labor practices at Medistar, Smolov changed the classification of the drivers from independent contractors to employees. He then met with all of his drivers, explained the new employment structure, and told them that they would now be paid overtime if they worked over forty hours per week. Although Smolov states that he was ignorant of wage laws, it is undisputed that before the Department of Labor's investigation, he made no effort to ensure Medistar was compliant with either the FLSA or IMWL.

After it became clear that Medistar was having financial difficulties, Smolov wound down its operations, canceled its contracts, sold its vehicles, and terminated its employees. He also reviewed and signed the company's bankruptcy filing. He also made the decision to pay his mother $13,000 in lieu of paying other outstanding debts.

## II. *ANALYSIS*
### A. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ. P. 56(a). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must produce specific evidence

showing that there is a genuine issue for trial and may not rely on mere allegations or denials of the pleadings. *Hardrick v. Airway Freight Systems, Inc.* 63 F.Supp.2d 898, 901 (N.D. Ill. 1999); *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch.* 278 F.3d 693, 699 (7th Cir. 2002).

### B. Smolov is an "Employer" as Defined in the Relevant Statutes.

■ Smolov has failed to raise any substantial challenge to plaintiffs' statement of facts. The issue before the Court is whether Smolov was an "employer" under the FLSA, IMWL, and Illinois Wage Payment and Collection Act ("IWPCA"). Although he contends that it is Mr. Binder who was the true manager of Medistar, the facts to which Smolov has admitted firmly establish his own liability an employer under the relevant statutes. Smolov's entire argument is premised on the notion that there can be only one employer, which is a faulty premise under existing case law.

■ The FLSA defines an employer as "anyone acting directly or indirectly in the interest of an employer in relation to an employee." 28 U.S.C. § 203(d). The definition of employer under the IMWL is similarly expansive: "any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." 820 ILCS 105/3(c). Not surprisingly, therefore, courts employ the same test under both statutory schemes to determine a defendant's status as an employer. *Condo v. Sysco Corp,* 1 F.3d 599, 601 n.3 (7th Cir. 1993)(where the language of the IMWL and the FLSA are coextensive, the same analysis may be used to determine whether an overtime violation occurred).

■ The Supreme Court has held that Congress intended the definition of employer to be "expansive." *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973). Further, contrary to defendant's operative assumption in its opposition to this motion, more than one person/entity may qualify as an employer under the statute. *Id.* at 191, 94 S.Ct. 427. Thus, even assuming that Mr. Binder had management responsibilities at Medistar, if defendant meets the test as an employer under the statute, the Court must find him to be so.

■ In this circuit, there is no one specific test for determining employer status under the FLSA; instead a court must analyze the totality of the circumstances as a question of law. *Karr v. Strong Detective Agency,* 787 F.2d 1205, 1206 (7th Cir. 1985). However, the definition of an employer includes "a supervisor who uses his authority over the employees whom he supervises to violate their rights under the FLSA." *Luder v. Endicott,* 253 F.3d 1020, 1022 (7th Cir. 2001); *Riordan v. Kempiners,* 831 F.2d 690, 695 (7th Cir. 1987). The FLSA will apply to a defendant if he or she possesses control over the aspect of employment alleged to have been violated even if the defendant does not exercise control over the day-to-day affairs of the employer. *Afanassov v. Vorbroker,* 02 C 2135, 2002 WL 1400534 (N.D. Ill. June 27, 2002) (citations omitted).

Against these standards, Smolov's liability is clear. He was the only person at Medistar with control over payroll, accounting, and setting compensation. He computed the employees' hours, determined their wages, and signed an overwhelming majority of their checks. He determined what deductions would be taken from their paychecks. He made decisions about the order in which bills were paid, delaying employee paychecks when Medistar lacked funds to pay all its outstanding liabilities. If drivers questioned their pay, Smolov was the individual who answered their questions. And ultimately, after the Department of Labor questioned the erro-

neous classification of Medistar's drivers as independent contractors, it was Smolov who decided to re-classify them as employees.

In an attempt to evade employer liability under the relevant statutes, Smolov's only answer to the undisputed evidence is to assert that Binder was also a manager at Medistar. But the law does not permit Smolov to deflect his own liability as an employer simply because there was another manager. *See Arteaga v. Lynch*, No. 10 C 1444, 2013 WL 5408580, at *12 (N.D. Ill. Sept. 26, 2013) ("More than one person may be an employer and liable for FLSA violations simultaneously under the Act"). Even assuming that Binder had a supervisory role at Medistar that would qualify Binder to be an "employer" under the relevant statutes, Smolov would *not* be relieved of liability. Smolov has cited no case law (nor has the Court found any) that holds that only one individual at a time may be defined as an "employer" for the purposes of the FLSA. Moreover, the evidence to which Smolov has stipulated shows that it was Smolov who controlled Medistar's pay practices. This is sufficient to meet the definition of employer discussed above. Therefore, the Court finds that Smolov is an employer for purposes of the FLSA and IMWL.

■ In addition to his overtime claim, plaintiff Natal also has a separate claim for wages not paid at all in March 2014, and improper deductions from his pay under the Illinois Wage Payment and Collection Act ("IWPCA"). The IWPCA defines an employers as "any person ... acting directly or indirectly in the interest of the employer in relation to an employee, for which one of more persons is gainfully employed." 820 ILCS 115/2. By the plain language of the statute, Smolov meets this definition. Smolov was significantly involved in the day-to-day operations of the company and was directly responsible for compensating employees. Smolov hired Natal, was involved in the decision to take the deductions from his pay, and, in March 2014, when the company failed to pay Natal any wages, was the only manager left at the company to make that decision. In addition to the test discussed above, known as the economic realities test, the IWPCA also imposes liability on individuals who knowingly permit a wage violation. 820 ILCS 115/1. In this case, there is no factual dispute that it was Smolov who decided not to pay Natal his wages and who authorized the impermissible deductions from his pay. Thus, Smolov qualifies as an employer under this part of the statute as well, and is liable for these damages.

■ This leaves the issue of liquidated damages. Under the FLSA, once an employer is found liable for overtime compensation, liquidated damages (calculated by doubling the wage loss) are appropriately awarded unless the employer can establish that: (1) its failure to pay overtime was in good faith, and (2) it had reasonable grounds for believing that its act or omission did not violate the FLSA. 29 U.S.C. § 260; *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1223 (7th Cir, 1995); *Walton v. United Consumers Club*, 786 F.2d 303, 312 (7th Cir. 1986) ("A good heart but empty head does not produce a defense"). Again, Smolov does not offer any facts that suggest that he can meet this affirmative burden. He asserts that he had "subjective" good faith, but then admits that neither he nor Binder did anything to ensure compliance with either wage act requirement. He again attempts to deflect responsibility to Binder, suggesting, again without evidentiary support, that it was Binder who oversaw Smolov's job responsibilities. Because Smolov cannot show that he had a reasonable basis for believing that Medistar was, in fact, in compliance, the Court sees no reason to

disallow these damages which are mandatory without such a showing. *Walton*, 786 F.2d at 310.

### *Conclusion*

Judgment is entered against defendant and for plaintiff on the issue of liability and for liquidated damages. Plaintiff is directed to prepare a judgment order and, after consultation with defendant, submit it to this Court by January 4, 2017. If the parties disagree as to the wage calculations, the Court will convene a trial to determine damages.