Dwayne DONNELLY, Plaintiff,

v.

Bobby PETERS, Individually and in his official capacity as Mayor of Columbus, The City of Columbus, et al., Defendants.

No. 4:01–CV–66–3(CDL).

United States District Court,
M.D. Georgia,
Columbus Division.

March 7, 2002.

Samuel W. Worthington, III, Columbus, GA, David Jonathan Grindle, Columbus, GA, for plaintiff.

Elizabeth Stacy Morgan, Columbus, GA, Clifton Cartwright Fay, Columbus, GA,

Devon Orland, Atlanta, GA, for defendants.

## ORDER

LAND, District Judge.

This case arises from the termination of Plaintiff as an employee of Defendant Columbus, Georgia (hereinafter "City"). Plaintiff contends that Defendants have deprived him of his constitutional right against self-incrimination under the Fifth Amendment, his constitutional right to counsel under the Sixth Amendment, and his constitutional right to due process under the Fourteenth Amendment. He seeks to remedy those alleged constitutional violations pursuant to 42 U.S.C. § 1983.[1]

█ Defendant John Paul Ford, in his official capacity as an employee of the State of Georgia, has filed a motion to dismiss Plaintiff's complaint based upon the Eleventh Amendment to the United States Constitution. Defendant Ford, in his personal capacity, has filed a motion to dismiss based upon the doctrine of qualified immunity. Defendant City has filed a motion for summary judgment based upon principles of collateral estoppel and *res judicata*. The City also contends that the undisputed facts establish that it committed no constitutional violation and that Plaintiff has failed as a matter of law to establish the elements of a § 1983 claim against it. Defendants Bobby Peters and C.L. Golden seek summary judgment based upon the doctrine of qualified immunity.

For the reasons set forth below, the Court finds that Plaintiff's claims against Defendant Ford should be dismissed. The Court further finds, as explained hereinbelow, that no genuine issue of material fact exists to be tried regarding the liability of the remaining Defendants, and therefore their motions for summary judgment are granted.

## BACKGROUND

Plaintiff was a correctional officer with the City. He was accused of mistreating an inmate at the Muscogee County Prison. Subsequent to the inmate's complaint, Defendant Golden, the warden, initiated an investigation. As part of that investigation, he instructed Plaintiff to go to the Georgia Bureau of Investigation Office in Atlanta to submit to a polygraph examination. Golden claims that he informed Plaintiff of his "Garrity rights" pursuant to City policy.[2] Plaintiff disputes this and claims he was never informed of his "Garrity rights."

When Plaintiff arrived at the GBI office, he contends that the GBI employee informed him that to proceed with the polygraph examination Plaintiff needed to sign certain forms. Plaintiff was unsure about the purpose of the forms and was concerned that his responses could have been incriminating. He refused to sign the forms. Based upon his refusal, the GBI refused to conduct the polygraph examination.

---

1. Plaintiff also alleged an equal protection claim in his complaint. Based upon his briefs and argument at the hearing on this motion it appears clear that claim has been abandoned.

2. The U.S. Supreme Court held in *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) that where police officers being investigated made confessions after being given a choice either to incriminate themselves or to forfeit their jobs, then these con-

fessions were not voluntary but were coerced. Therefore, the Fourteenth Amendment prohibited their use in subsequent criminal prosecutions in state court. Since *Garrity*, it is well recognized that government employers should inform employees whom they are investigating of their "Garrity rights", which include their right not to be subjected to dismissal for refusing to give an incriminating statement that may be used against them in a subsequent criminal proceeding.

Upon learning of Plaintiff's refusal to sign the forms and failure to take the polygraph examination, Defendant Ford, an employee of the Georgia Department of Corrections, informed Defendant Golden that Plaintiff was no longer permitted to have supervisory authority over State inmates.[3] Golden concluded that if Plaintiff could not supervise State inmates, then he could not do his job given the large percentage of State inmates at the Muscogee County Prison. Consequently, Golden terminated Plaintiff's employment.[4]

Plaintiff appealed his termination to the Columbus, Georgia, Personnel Review Board. The Personnel Review Board held a hearing on Plaintiff's appeal. The Personnel Review Board affirmed the termination. It refused, however, to consider the issue of whether Plaintiff was terminated because of his alleged refusal to submit to the polygraph examination, finding that the decision that resulted in Plaintiff's termination was made by the State when it informed the City that Plaintiff could no longer supervise State inmates. It reasoned that since it had no jurisdiction over State decisions, its hands were tied. Therefore, it determined that it had no choice but to affirm the termination. Plaintiff appealed the Personnel Review Board decision to the Superior Court of Muscogee County which affirmed the decision of the Personnel Review Board under the "any evidence" standard. Plaintiff then sought review by the Georgia Court

of Appeals. That application for review was denied. Plaintiff then filed this lawsuit pursuant to 42 U.S.C. § 1983.

## PLAINTIFF'S CLAIMS

### A. Claims Against Ford In His Official Capacity

Defendant Ford has filed a motion to dismiss Plaintiff's claims against him in his official capacity, contending that he is immune from suit under the Eleventh Amendment to the United States Constitution. The Court agrees. *See United States Constitution,* Eleventh Amendment. Accordingly, Ford's motion to dismiss Plaintiff's claims against him in his official capacity is granted.

### B. Claims Against Ford In His Personal Capacity

■ Plaintiff's complaints against Ford arise from his directive to the City that Plaintiff should not supervise State inmates. Giving the Plaintiff the benefit of all reasonable inferences, Plaintiff apparently contends that Ford had some duty to assure that Plaintiff was informed of his "Garrity rights," and Ford's failure to do so resulted in a deprivation of Plaintiff's Fifth Amendment right to be free from self-incrimination. It should be noted that regardless of whether Plaintiff was adequately informed of his "Garrity rights," Plaintiff exercised those rights by refusing

---

**3.** The characterization of Ford's communique to Golden is in dispute. The State's counsel characterizes it as simple advice, informing Golden that due to Plaintiff's alleged failure to cooperate in the investigation, Ford could not risk exposing State inmates to Plaintiff. The City's counsel, on the other hand, argues that the City viewed Ford's communique as a directive which essentially left them with no choice but to terminate Plaintiff. A significant percentage of the inmates at the City facility were State inmates pursuant to a contract between the City and the State. There-

fore, if a correctional officer could not supervise State inmates, there was nothing for him to do. Consequently, Plaintiff argues, and the City agrees, that Ford's directive had the effect of terminating Plaintiff's employment.

**4.** Although the City provides additional reasons for firing Plaintiff, including the allegation of inmate abuse, a genuine issue of material fact exists on the question of whether Plaintiff was fired as a result of the directive from Defendant Ford.

to submit to the polygraph examination. The only remaining "Garrity" claim appears to be that his refusal resulted in his termination, contrary to the spirit of *Garrity*. Plaintiff also contends that Ford conspired with Defendant Golden to deprive Plaintiff of his due process rights under the Fourteenth Amendment by instructing Golden that Plaintiff was not allowed to supervise State prisoners.

In order to prevail against Ford in his personal capacity, Plaintiff must allege more than a constitutional violation. He must allege sufficient facts to overcome Ford's qualified immunity. Qualified immunity shields state actors from personal liability in § 1983 claims, unless the state actor has violated a well-established constitutional or federal right. *See Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir.2000); *see also Stanley v. City of Dalton*, 219 F.3d 1280, 1285 (11th Cir.2000). Plaintiff must show that the relevant law has "earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1149 (11th Cir.1994).

Although one's right to be free from self-incrimination under *Garrity* is clearly established, it is not clear that Ford's conduct in this case amounts to a clear violation of Plaintiff's "Garrity rights." It is also not clear that any alleged conduct by Ford violated Plaintiff's due process rights. Plaintiff was not a State employee. Defendant Ford had no authority to terminate Plaintiff. Moreover, there is no allegation that Ford was involved in any way in attempting to have Plaintiff submit to the polygraph examination and

sign the papers necessary for that examination. The allegation in the complaint is that the GBI was involved in that process. Therefore, based on a review of Plaintiff's complaint, this Court finds that Ford is entitled to qualified immunity and that Plaintiff's complaint fails to state a claim against Ford. Accordingly, Ford's motion to dismiss is granted.

### C. Claims Against the City[5]

Pretermitting whether the City violated Plaintiff's constitutional rights in this case by failing to provide him with his "Garrity rights," this Court is required to give preclusive effect to the state court judgment upholding the Personnel Review Board's rejection of Plaintiff's appeal. In the earliest days of our Republic, Congress decided that all United States courts shall afford the same full faith and credit to state court judgments that would apply in the State's own courts. 28 U.S.C. § 1738 (Act of May 26, 1790, ch. 11, 1 Stat. 122). Section 1738 "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). It is beyond dispute that § 1738 applies to § 1983 claims. *See Allen v. McCurry*, 449 U.S. 90, 99, 101 S.Ct. 411, 417, 66 L.Ed.2d 308 (1980). Therefore, the issue before the Court is what preclusive effect does the final judgment by the Superior Court of Muscogee County affirming Plaintiff's termination have on Plaintiff's federal claims against the City.

---

5. Plaintiff's claims against Mayor Peters and Warden Golden in their official capacities are considered claims against the City. *See Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *see also Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

To determine whether Plaintiff's federal claims are precluded based upon principles of issue and claim preclusion, the Court must apply Georgia law. *See* 28 U.S.C. § 1738. Under Georgia law, "a judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." O.C.G.A. § 9–12–40. The principles of claim and issue preclusion apply to decisions by administrative tribunals. According to the Eleventh Circuit, this Court must afford "preclusive effect to the decision of an administrative tribunal as affirmed by the Superior Court." *Gorin v. Osborne*, 756 F.2d 834, 837 (11th Cir.1985).

The only limitation on § 1738 under the circumstances of this case is that "the judicially created doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate the claim." *Kremer*, 456 U.S. at 480, 102 S.Ct. 1883. "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Id.* at 481, 102 S.Ct. 1883. However, the "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Id.* In evaluating whether the state proceedings complied with due process considerations, it is important to note that "no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause." *Id.* at 483, 102 S.Ct. 1883. "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Id.*

In this case, Plaintiff had a hearing before the City Personnel Review Board. He then obtained review of the Review Board's decision by the Superior Court of Muscogee County. Finally, he applied to the Georgia Court of Appeals for review of the Superior Court decision. He also had the opportunity to seek review by the Georgia Supreme Court but chose not to do so. No one can seriously question that this system satisfies procedural due process.[6] Therefore, the state court judgment precludes this Court from considering Plaintiff's federal claims against the City. Accordingly, summary judgment is granted in favor of the City.

### D. *Claims Against Mayor Peters in His Personal Capacity*

With regard to the liability of Mayor Peters in his personal capacity, Plaintiff has not produced any evidence from which a reasonable jury could conclude that he committed any act resulting in or contributing to the denial of any of Plaintiff's constitutional rights. Therefore, he is en-

---

**6.** The Court does have concerns that Plaintiff was unable to have his contentions regarding his "Garrity rights" heard by the Personnel Review Board. He argues that this was a denial of due process. However, he had the opportunity to attack the constitutionality of the appeals process before the Superior Court and ultimately before the state appellate courts. Furthermore, a process is in place for his constitutional due process challenge to have been made all the way to the U.S. Supreme Court after review was exhausted in the state system. Due process does not require that he be guaranteed that his complaints be heard, but that a process be in place for those contentions to be asserted. A review of the record reveals that no attacks were made against the state process as violative of due process, although he had an opportunity to assert those contentions.

titled to summary judgment in his personal capacity.

### E. *Claims Against Warden Golden in His Personal Capacity*

■ To the extent that Warden Golden participated in the events that led to the alleged violation of Plaintiff's Fifth Amendment rights by failing to disclose Plaintiff's "Garrity rights" and led to the alleged violation of Plaintiff's Fourteenth Amendment rights by discharging Plaintiff, he is protected in his personal capacity by the doctrine of qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As previously noted, a law or right is "clearly established" if it has "earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Lassiter v. Alabama A & M University Board of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994)

Warden Golden relied upon the State's Department of Correction's procedures and acted upon their recommendations which ultimately resulted in Plaintiff's termination of employment. It appears that he had little choice in the matter. Under these facts, it cannot be said that his conduct violated a clearly established constitutional right of which a reasonable person would have known. Therefore, he is entitled to qualified immunity. Since no genuine issue of material fact exists on the question of his qualified immunity, summary judgment is appropriate.

### CONCLUSION

Plaintiff's claims against Ford, in his official capacity, are dismissed based upon the Eleventh Amendment to the U.S. Constitution. Plaintiff's claims against Ford, in his personal capacity, are dismissed based upon Ford's qualified immunity. Summary judgment is granted in favor of the City, Mayor Peters (in his official capacity), and Warden Golden (in his official capacity) based upon principles of claim and issue preclusion. Summary judgment is granted in favor of Mayor Peters, in his personal capacity, because Plaintiff has produced no evidence to support any of his claims against Mayor Peters in his personal capacity. Summary judgment is granted in favor of Warden Golden, in his personal capacity, based upon Warden Golden's qualified immunity.