**Stanley CHANCE**

v.

**Gary DEFILIPPO, et al.**

**No. 3:04CV156(JBA).**

United States District Court,
D. Connecticut.

March 25, 2005.

Stanley Chance, Fairfield, CT, pro se.

Eileen M. Meskill, Attorney General's Office Health & Human Services, Hartford, CT, for Gary DeFillppo Comm., Sharon Madden Hearing Ofcr. and Dennis King Mgr.

**Memorandum of Decision [Doc. # 10]**

ARTERTON, District Judge.

Defendants Gary DeFilippo, State of Connecticut Commissioner of the Department of Motor Vehicles ("DMV"); Sharon Madden, DMV Hearing Officer; and Dennis King, Manager, State of Connecticut Department of Transportation ("DOT") have moved pursuant to Fed.R.Civ.P. 12(b)(1) and (6) to dismiss plaintiffs' complaint. Despite notice issued May 11, 2004 of the consequences of failing to oppose this motion, see [Doc. # 12], plaintiff Stanley Chance ("Chance"), *pro se,* has failed to file any opposition. D. Conn. L. Civ. R. 7(a) provides that "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion." After full review of the pleadings and defendant's memorandum of law, defendant's motion is GRANTED, for the reasons that follow.

Plaintiff alleges first that the Department of Motor vehicles (DMV) required that he turn in his unexpired non-driver's license identification for which he paid a $10 fee before receiving a driver's license, also costing $10, and refused to give him the driver's license for free or provide a refund for the still-valid non-driver's license identification. He argues that the DMV's policy of taking back a valid non-driver's license identification card without providing a refund or credit violates due process, the Fair Debt Collection Practice Act, and the Connecticut Unfair Trade Practice Act.

Second, plaintiff alleges that the "P" or "public service" endorsement to his driver's license, which enables him to drive livery, taxis, and limos, was removed without notice or hearing. Subsequent to filing his complaint, plaintiff informed the Court by letter that his "P" endorsement to his driver's license was restored, but that he continues to face questions about the reasons for the suspension. *See* [Doc. # 8].

Third, plaintiff alleges that he was denied an "S", or "school" endorsement to his driver's license, which would enable him to carry children, without due process. Although he states that he received a hearing prior to the denial of the "S" endorsement, plaintiff states that the Hearing Officer, Sharon Madden, relied on information from a prior hearing and "did not give the plaintiff any more information and no papers," and denied the "S" endorsement based solely on his criminal record, which he claims is prohibited by Connecticut General Statute 46a–80. *See* Complaint [Doc. # 3] at ¶ 25.

Finally, plaintiff states that he wishes to apply for a livery permit but does not want to pay the $200.00 fee when believes he will be denied based on his criminal record. *See id.* at ¶ 27.

Plaintiff seeks a declaratory judgment that the procedure used by defendants violated his constitutional rights; an injunction prohibiting the DMV from taking non-driver's license identification cards or ordering the DMV to give credit of the purchase price of the non-driver's license identification card; an injunction ordering the Department of Transportation to grant him his livery permit; and an injunction ordering the DMV to restore his "P" endorsement and "S" endorsement to his driver's license. Plaintiff's complaint does not request monetary damages. He states, however, that the claims are made against the defendants in both their individual and official capacities.

■ The Court concludes that plaintiff has failed to state a claim on which relief can be granted. First, plaintiff's notice that the state has restored his "P" endorsement shows that his claim is moot, as he has obtained the relief sought in his complaint. The Department of Motor Vehicles, in fact, did more than simply restore his public service license, as it wrote him a letter stating that the suspension of his "P" endorsement "should not have occurred and we are reviewing this process to determine the causes and to prevent reoccurrence," and issued a Restoration Notice that states, "Suspension rescinded—no fee." *See* Attachments to [Doc. # 8]. Because the DMV rescinded the suspension and acknowledged that the suspension never should have taken place,[1] there is no further remedy this Court can provide. The ongoing injury that plaintiff has alleged—that potential employers want to know why his public service endorsement was suspended in the first place—cannot be addressed in this forum, because there is no legitimate basis for an employer to believe that Mr. Chance's "P"

endorsement was suspended for cause, given the remedial action taken by the DMV.

■ Second, plaintiff's request for return of his non-driver's identification card or a refund of the purchase price of that card is not cognizable under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et al., because plaintiff's complaint does not identify a "debt" within the meaning of the FDCPA that defendants sought to collect. *See* 15 U.S.C. § 1692a (defining "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or nor such obligation has been reduced to judgment.").

■ Third, plaintiffs' claims under CUTPA against the state officials are barred by the Eleventh Amendment. "A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). While Eleventh Amendment immunity does not extend to suits against a state official in his "individual capacity," *see, e.g., Hafer v. Melo,* 502 U.S. 21, 25–26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), plaintiff does not seek money damages that may be obtained from an individual, only declaratory and injunctive relief,

---

1. To "rescind" is "to do away with, take away, remove," or to "to vacate or make void." Webster's Third International Dictionary Online "rescind" at 1, 3 (2002).

which would in this context implicate the official capacities of the defendants.

■ Fourth, the Court concludes that plaintiff has failed to state a due process claim regarding the state's failure to grant him an "S" endorsement on his license, because he has not identified a cognizable property or liberty interest. Plaintiff's complaint states that he took a training and certification class in order to obtain his "S" endorsement on his drivers' license, which would allow him to drive a school bus, but was denied his "S" endorsement based solely on his criminal record. Thus, it is clear that plaintiff cannot claim an ownership or possessory interest in the "S" endorsement. This case is distinguishable from the license entitlement recognized in *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), moreover. In *Bell*, the Supreme Court found that "[o]nce licenses are issued ... their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without the procedural due process required by the Fourteenth Amendment." In contrast to *Bell*, here plaintiff has not had a "S" endorsement on his driver's license taken away, because it never was issued to him.

The Court finds no basis for concluding that plaintiff had a statutory entitlement to this "S" license. The relevant Connecticut statutes expressly permit the DMV Commission to refuse to issue a license based on the applicant's criminal record. Conn. Gen.Stat. § 14–44(e) provides:

> Prior to issuing an operator's license bearing a school endorsement, the commissioner shall require each applicant to submit to state and national criminal history records checks. The criminal history records checks required pursuant to this subsection shall be conducted in accordance with section 29–17a. If notice of a state criminal history record is received, the commissioner may refuse to issue an operator's license bearing such endorsement and, in such case, shall immediately notify the applicant, in writing, of such refusal.

Further, plaintiff's complaint and the documents attached to his complaint indicate that he received the process he is due. Conn. Gen.Stat. § 14–44(f) entitled plaintiff to a hearing to contest the state's refusal to issue the school license, and he received this hearing, at which the hearing officer concluded that "the Respondent is unqualified to hold an S endorsement due to his lengthy and serious criminal record." *See* Complaint [Doc. # 3, Ex. H]. The hearing officer's decision reflects her consideration of the criteria of Conn. Gen. Stat. § 46a–80(b)[2], as the decision describes the nature of plaintiff's criminal offenses (which include crimes of violence), notes that one conviction occurred as a result of conduct in prison (which reflects the degree of plaintiff's rehabilitation), and states that plaintiff was released from pris-

---

2. Conn. Gen.Stat. § 46a–80(b) provides that "[a] person may be denied employment by the state or any of its agencies, or a person may be denied a license, permit, certificate or registration to pursue, practice or engage in an occupation, trade, vocation, profession or business by reason of the prior conviction of a crime if after considering (1) the nature of the crime and its relationship to the job for which the person has applied; (2) information pertaining to the degree of rehabilitation of the convicted person; and (3) the time elapsed since the conviction or release, the state, or any of its agencies determines that the applicant is not suitable for the position of employment sought or the specific occupation, trade, vocation, profession or business for which the license, permit, certificate or registration is sought."

on in March 2001, two years prior to his application for an "S" endorsement. Given the strong state interest in protecting the safety of children riding school buses, the Court concludes that the process alleged in plaintiff's complaint of which he complains satisfies the Fourteenth Amendment.

■ Finally, the Court concludes that plaintiff's claims regarding his anticipated denial of a livery permit are not yet ripe for review. Conn. Gen.Stat. § 13b–103 provides:

(a)(1) No person, association, limited liability company or corporation shall operate a motor vehicle in livery service until such person, association, limited liability company or corporation has obtained a permit from the Department of Transportation, specifying the nature and extent of the service to be rendered and certifying that public convenience and necessity will be improved by the operation and conduct of such livery service. Such permits shall be issued only after a written application for the same has been made and a public hearing has been held thereon. Upon receipt of such application, together with the payment of a fee of two hundred dollars, the department shall fix a time and place of hearing thereon, within a reasonable time, and shall promptly give written notice of the pendency of such application and of the time and place of such hearing to each applicant, the mayor of each city, the warden of each borough and the first selectman of each town, within which any such applicant desires to maintain an office or headquarters, to any carrier legally operating motor vehicles in livery service within the same territory and to other interested parties . . .

(b) In determining whether or not such a permit will be granted, the Department of Transportation shall take into consideration the present or future public convenience and necessity for the service the applicant proposes to render, the suitability of the applicant or the suitability of the management if the applicant is a limited liability company or corporation, the financial responsibility of the applicant, the ability of the applicant efficiently and properly to perform the service for which authority is requested and the fitness, willingness and ability of the applicant to conform to the provisions of this chapter and the requirements and regulations of the department under this chapter.

Because the provisions for the issuance of a livery permit are distinct from those governing the issuance of an "S" endorsement, and because plaintiff has not yet applied for a livery permit, there is no basis for plaintiffs' assumption that the state will not comply with its own regulations.

For the foregoing reasons, defendants' motion to dismiss [Doc. # 11] is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.